PHILLIP A. TALBERT
United States Attorney
JEFFREY A. SPIVAK
EMILIA P.E. MORRIS
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:20-CR-00109-NODJ-BAM |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: TBD<br>TIME: TBD |
| STEPHEN R. MEIS, M.D., | |
| Defendant. | |

## I.   INTRODUCTION

**A.   Scope of Agreement.**

The information in this case charges the defendant with a violation of 21 U.S.C. §§ 331(a) and 333(a)(1)– Introduction of Misbranded Drug Into Interstate Commerce (Sole Count). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.   Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

PLEA AGREEMENT                                1

concerning the criminal activities of defendant, including activities which may not have been charged in the information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea.

The defendant will plead guilty to a violation of 21 U.S.C. §§ 331(a) and 333(a)(1)– Introduction of Misbranded Drug Into Interstate Commerce (Count One). The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea(s) should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B. Special Assessment.

The defendant agrees to pay a special assessment of $25.

### C. Fine.

The defendant agrees to pay $2,500 as a criminal fine.

### D. Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### III.   THE GOVERNMENT'S OBLIGATIONS

#### A.   Dismissals/Other Charges.

The government agrees not to bring any other charges arising from the conduct outlined in the Factual Basis attached hereto as Exhibit A. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.C (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)) and VII.B (Waiver of Appeal and Collateral Attack) herein.

#### B.   Recommendations.

##### 1.   Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range as determined by the Court. If the court imposes a term of probation, the government will recommend a two year term of probation.

##### 2.   Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

#### C.   Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also

understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.  ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty, 21 U.S.C. §§ 331(a) and 333(a)(1)– Introduction of Misbranded Drug Into Interstate Commerce:

First, the defendant introduced or caused to be introduced a drug into interstate commerce; and

Second, the drug was misbranded at the time it was introduced into interstate commerce.

The defendant fully understands the nature and elements of the crimes charged in the information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.  MAXIMUM SENTENCE

### A.  Maximum Penalty.

The maximum sentence that the Court can impose is 1 year of incarceration, a fine of $100,000, 1 year supervised release, a 5 year period of probation and a special assessment of $25.

### B.  Violations of Supervised Release.

The defendant understands that if he violates a condition of probation at any time during the term of probation, the Court may revoke or modify probation and require the defendant to serve up to the statutory maximum penalties for the offense(s).

## VI.  SENTENCING DETERMINATION

### A.  Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into

consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

    **B.**    **Stipulated Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

        1.    Base Offense Level: 6 (2N2.1)

        2.    Specific Offense Characteristics: None

        3.    Acceptance of Responsibility: See paragraph III.B.2 above

        4.    Criminal History: The parties estimate, but do not stipulate, that the defendant's criminal history category will be I. The parties also estimate that the defendant will be eligible for the Adjustment of Certain Zero-Point Offenders under U.S.S.G. § 4C1.1.

        5.    Sentencing Range: 0-6 months (The defendant understands that if the criminal history category differs from the parties' estimate, his Guidelines sentencing range may differ from that set forth here.)

## VII.    WAIVERS

    **A.**    **Waiver of Constitutional Rights.**

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

    **B.**    **Waiver of Appeal and Collateral Attack.**

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea(s), however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum(s) for the offense(s) to which he is pleading guilty. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal

challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea(s), dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.C herein.

C.  **Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

D.  **Impact of Plea on Defendant's Immigration Status.**

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offense(s) to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect

of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 9/26/24

KEVIN P. ROONEY
Attorney for Defendant

### B. Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 9/26/24

STEPHEN R. MEIS, M.D.
Defendant

///
///

C. **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated: 9/30/2024

PHILLIP A. TALBERT
United States Attorney

_____
JEFFREY A. SPIVAK
Assistant United States Attorney

PLEA AGREEMENT                                9

## EXHIBIT "A"

### Factual Basis for Plea(s)

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt which the Defendant Stephen D. Meis, M.D. agrees are true and correct:

At all relevant times, Stephen D. Meis, M.D. (MEIS) served as the Medical Director of Golden Sunrise Pharmaceutical, Inc. and Golden Sunrise Nutraceutical, Inc. (collectively, the "Golden Sunrise Companies" or "Golden Sunrise"). The Golden Sunrise Companies manufactured, marketed, and sold products that, the companies claimed, effectively treated a variety of medical conditions. The Golden Sunrise Companies were located in Porterville, California, in the State and Eastern District of California.

On/about March 30, 2020, MEIS and HUU TIEU, Golden Sunrise's President and Chief Executive Officer (TIEU) introduced and caused to be introduced into interstate commerce drugs, as defined in 21 U.S.C. § 321(g)(1)(C) called the "Emergency D-Virus Plan of Care" as a COVID-19 treatment (hereafter the "Drugs"). On that date, MEIS and TIEU sent a package via U.S. Mail containing the Drugs to a medical doctor in Royal Oak, Michigan. The Drugs consisted of a box containing various vials of Golden Sunrise products, including one called "Immunstem," together with an information sheet.

As MEIS now acknowledges and agrees, the labeling for the Drugs he introduced into interstate commerce on March 30, 2020, including the information sheet that accompanied the Drugs, was false and misleading. The labeling was false and misleading because it stated that ImunStem and other Golden Sunrise products had "proven themselves to the United States Food and Drug Administration (FDA)," had been approved by the United States Food and Drug Administration (FDA) to treat the COVID-19 virus, and had received a Regenerative Medicine Advance Therapy (RMAT) designation in the 2016 Cures Act, enacted by the 114th United States Congress. Contrary to these statements, and contrary to certain statements TIEU made to MEIS, the Drugs were not FDA approved, and no Golden Sunrise product had ever been approved by the FDA for any purpose or received an RMAT designation from the FDA.

///

I, STEPHEN R. MEIS, M.D., have read the Factual Basis for Plea and agree to the facts and stipulations contained therein.

Dated: 9/26/24

STEPHEN R. MEIS, M.D., Defendant

PLEA AGREEMENT                              A-2